# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN VASQUEZ-MARIN, | 1:11-cv-00412-LJO-DLB (HC) |
|     Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
|     v. | |
| MICHAEL L. BENOV, Warden | [Doc. 1] |
|     Respondent. | |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## BACKGROUND

Petitioner is currently in the custody at the Taft Correctional Institution (TCI). In the instant petition, Petitioner challenges a disciplinary infraction he received at TCI for possession of a hazardous tool. More specifically, Petitioner contends he 1) he was not provided with prior notice of the imposed sanctions pursuant to Prohibited Act Code 108; and 2) the prison failed to comply with the Administrative Procedure Act (APA) when implementing the Rules and Program Statements.

Respondent filed an answer to the petition on May 11, 2011. Petitioner did not file a traverse.

///

///

DISCUSSION

I. Subject Matter Jurisdiction and Venue

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. See 28 U.S.C. § 2241. Writ of habeas corpus relief is available if a federal prisoner can show he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). At the time the instant petition was, Petitioner was housed at CCCI but is now house at the Federal Correctional Institution in McKean, Pennsylvania (FCI McKean). "'[J]urisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petition and the accompanying custodial change.'" Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990), quoting Santillanes v. United States Parole Comm'n, 754 F.2d 887, 888 (10th Cir. 1985); accord Smith v. Campbell, 450 F.2d 829, 834 (9th Cir. 1971).

II. Exhaustion of Administrative Remedies

Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment must first exhaust all administrative remedies. Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir. 1984); Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983). The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement. Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990). Thus, "because exhaustion is not required by statute, it is not jurisdictional." Id. If Petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court."

If the petitioner did not properly exhaust his administrative remedies, and such remedies are no longer available, he may have procedurally defaulted on his claims. See Francis v. Rison, 894 F.2d 353, 354-55 (9th Cir.1990) (applying procedural default rules to administrative appeals); see generally Murray v. Carrier, 477 U.S. 478, 485 (1986); Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977); Tacho v. Martinez, 862 F.2d 1376, 1378 (9th Cir.1988). If a claim is

1  procedurally defaulted, the court may require the petitioner to demonstrate cause for the
2  procedural default and actual prejudice from the alleged constitutional violation.  See Francis,
3  894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); Murray, 477
4  U.S. at 492 (cause and prejudice test applied to procedural defaults on appeal); Hughes v. Idaho
5  State Bd. of Corr., 800 F.2d 905, 906-08 (9th Cir.1986) (cause and prejudice test applied to pro
6  se litigants).
7       The Bureau of Prisons has established an administrative remedy procedure governing
8  prisoner complaints. The procedure is set forth at 28 C.F.R. § 542.10 et. seq.  First, an inmate
9  must attempt to resolve the issue informally by presenting it to staff before submitting a Request
10 for Administrative Remedy.  28 C.F.R. § 542.13 (1999).  If dissatisfied with the response, the
11 prisoner may proceed with the formal filing of an Administrative Remedy Request.  28 C.F.R.
12 § 542.14 (1999).  Upon denial by the institution, the prisoner may appeal the decision by filing a
13 complaint with the Regional Director of the BOP.  28 C.F.R. § 542.15 (1999).  The Regional
14 Director's decision may be appealed to the General Counsel in Washington, D.C.  Id.  Appeal to
15 the General Counsel is the final step in the administrative remedy process.  Id.
16      Respondent does not address whether Petitioner has exhausted the administrative
17 remedies and therefore this Court assumes Petitioner has done so.
18 IV.    Analysis of Petition
19      During a locker search on January 16, 2010, a brown leather pouch was found containing
20 an earpiece, black leather bag, cell phone battery, and cell phone charger.  The leather pouch was
21 attached to the bottom of Petitioner's bed with two magnets.  Petitioner was issued a disciplinary
22 infraction for violating Prohibited Act Code section 108-Possession, Manufacturing, Introduction
23 of Hazardous Tool.  A disciplinary hearing was conducted on January 28, 2010, and Petitioner
24 was found guilty of the violation.
25      A.    Advance Notice of the Prohibitions in Prohibited Act Code 108
26      Petitioner claims he was not made aware that possession of electronic devices or related
27 equipment was considered possession of a hazardous tool was deemed not credible.  Petitioner
28 has been incarcerated at TCI since 2001.  In 2006, the Bureau notified all inmates that possession

of an electronic communication device or related equipment (such as a cell phone) would be charged with a Code 108 violation. (Ex. B, to Declaration of Lorena Matei; Declaration of Dale Patrick.) "Due process requires fair notice of what conduct is prohibited before a sanction can be imposed." Newell v. Sauser, 79 F.3d 115, 117 (9th Cir. 1996) (citing Grayned v. City of Rockford, 408 U.S. 104 (1972)). Although "due process undoubtedly requires certain minimal standards of specificity in prison regulation, "the degree of specificity required of such regulations is [not] as strict in every instance as that required of ordinary criminal sanctions." Meyers v. Alldredge, 492 F.2d 196, 310 (3d Cir. 1974). Under these circumstances, Petitioner received adequate notice that possession of cellular telephones was prohibited and could result in a Code 108 violation. Accordingly, there is no merit to Petitioner's claim of ignorance.

B.    Violation of APA

Petitioner contends that the BOP amended section 541.13 and did not comply with the APA by giving adequate notice and comments. Petitioner's claim is without merit.

Although Petitioner has a due process right to notice of the general categories of the acts prohibited, he has no due process right to notice as to any specific administrative sanction he might face if his violation is proven. Interpretive rules or general statements of policy are exempt from the APA's notice and comment requirement. See 5 U.S.C. § 553(b)(3)(A). In addition, the "BOP's internal agency guideline[s]" are not subject to the notice and comment requirements of the APA. Reno v. Koray, 515 U.S. 50, 61 (1995).

The instant challenge is to the fact that in 2006 BOP alerted all prisoners that a cellular phone is classified as a hazardous tool under Code 108. See e.g. Vasquez v . Shartle, 2011 WL 1004934 (N.D. Ohio 2011) (there is no notice and comment requirement.)  As such, the Bureau of Prisons internal agency guidelines and interpretative rules are not subject to the notice and comment requirement of the APA. Such guidelines and rules are entitled to deference if they are a permissible construction of the applicable statute. See Reno v. Koray, 515 U.S. 50, 61 (1995). In this instance, Code 108 was not written with such ambiguity and generality that Petitioner did not have adequate notice that his conduct could violate the rule. Code 108 specifically prohibits the possession or use of tools that are likely to be used in an escape or are hazardous to

institutional safety or security.  As noted at Petitioner's disciplinary hearing and acknowledged by several district courts, a cell phone can easily assist an inmate to communicate with others outside the prison for purposes of planning an escape.  (Cite record; United States v. Beason, 2011 WL 399896, *6-11 (N.N. Va. 2011) (listing several decisions upholding violations of possession of a cell phone under Code 108).

On December 8, 2010, subsequent to Petitioner's violation, the BOP amended the regulations to specifically include possession of cell phones as an example of a hazardous tool under Code 108.  See 75 FR 76263.  Several comments were received and responded to by the Bureau.  In particular with regard to a Code 108 violation, the following comment was received stating:

> Possession of cell phones should be under Code 297 instead of in the greatest severity category, unless the cell phone is used for criminal activity.
>
> The Bureau responded as follows:
>
> The Bureau chooses to make possession of a cellular telephone or other electronic device a Greatest level prohibited act for the following reasons:
>
> Rapid technological advances have resulted in smaller cell phones which are easier to introduce into Bureau facilities.  They may be purchased with very little accountability at a very low cost by those seeking to introduce them into Bureau facilities.  Also, new wireless communications devices are being introduced to the market with increasing frequency, and are likewise small and easy to introduce.  This is causing an increase in the number of electronic devices being introduced into Bureau facilities.
>
> When the Bureau first began investigating the potential problem in 2003, we discovered that during that calendar year, institutions reported confiscating 270 cellular telephones from inmates.  At least two inmates escaped from minimum security facilities while in possession of cellular telephones.  We therefore increased the severity level for possession of a cellular telephone or other electronic device to reflect the potential seriousness of the conduct, which may result in aiding escape, continuing criminal activity, facilitating terrorism, and a host of other potential threats to the safety, security, and orderly operation of correctional facilities, and for the protection of the public.

Thus, any challenge to the December 2010 amendment is without merit.

    C.    Some Evidence to Support Rules Violation

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment.  Wolff v. McDonnell,

418 U.S. 539, 555 (1974). Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at 556. Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), *citing* Superintendent, etc. v. Hill, 472 U.S. 445, 454-455 (1984).

However, when a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567. In addition, due process requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455, *citing* United States ex rel. Vatauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927). The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder. Hill, 472 U.S. at 455-456; see also Barnsworth v. Gunderson, 179 F.3d 771, 779 (9th Cir. 1990); Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987). Determining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. Hill, 472 U.S. at 455; Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).

As an initial matter, although Petitioner does not challenge the procedural process of the disciplinary hearing, the Court notes that Petitioner was provided adequate and timely notice of the hearing, he was provided with an opportunity to testify and present evidence, and he was provided with a statement of the pertinent findings and evidence relied upon. Accordingly, there is no procedural due process violation. In addition, there is some evidence to support the DHO's finding that Petitioner violated section 108 by possessing cellular phone accessories.

28 C.F.R. § 541.13 sets forth prohibited acts of the greatest severity which includes a violation of Prohibited Act Code § 108 which states:

Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade).

28 C.F.R. § 541.13, tab. 3.

Here, the disciplinary findings are supported by some evidence, including Petitioner's admission that he possessed the cellular phone accessories and that it was a big deal, the reporting officer's list of the items found in the locker search, and photographs of the items found.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.  The instant petition for writ of habeas corpus be DENIED; and

2.  The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **June 21, 2011**                  /s/ **Dennis L. Beck**
                                       UNITED STATES MAGISTRATE JUDGE